

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

November 12, 2021

**BY ECF**

The Honorable Lewis J. Liman
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, N.Y. 10007

   Re: *United States v. Lawrence Ray*, S1 20 Cr. 110 (LJL)

Dear Judge Liman:

  The Government writes to oppose defendant Lawrence Ray's motion to suppress evidence obtained from a laptop that was seized by law enforcement on July 21, 2021 from the home of Ray's father (the "Laptop"). (Dkt. 239). As Ray himself acknowledges, his present "challenges to the computer warrant are similar to those identified in [Ray's] previous" motions to suppress, which "the Court has already rejected." (Dkt. 239 at 1). As before, Ray's suppression motion should be rejected. As an initial matter, Ray has not established standing to support his suppression motion. In any event, the motion is meritless. The evidence from the Laptop was seized pursuant to *two* judicially-authorized search warrants that were supported by probable cause, and which Ray has not shown were executed in bad faith. The Government here relies on legal authority delineated in its opposition to the defendant's first suppression motions, which is incorporated by reference. (*See* Dkt. 118).

  **A. Ray has Not Established Standing and He Abandoned the Laptop**

  As with Ray's original motions to suppress, he has not alleged under oath a possessory interest in the Laptop.[1] His failure to do so now is inexcusable, given this Court's prior dispensation for Ray to submit a belated possessory affidavit with respect to his initial motions to suppress, and his plain familiarity with that procedure. Moreover, although the Government maintains that the laptop belonged to, and was used by, Ray, he cannot establish standing because he abandoned the Laptop before it was seized by law enforcement and he therefore cannot establish a privacy interest in its contents.

  Although the Fourth Amendment guarantees an expectation of privacy against unreasonable search "in their persons, houses, papers, and effects," an individual loses this

---

[1] As Ray appears to implicitly concede, he has no standing to challenge the search of his father's residence, which resulted in seizure of the Laptop, because that residence is not his.

November 12, 2021
Page 2

expectation when they abandon that property. *See Abel v. United States*, 362 U.S. 217, 241 (1960) ("[P]etitioner had abandoned these articles. . . . There can be nothing unlawful in the Government's appropriation of such abandoned property."); *United States v. Welbeck*, 145 F.3d 493, 498 (2d Cir.1998) ("A warrantless seizure of abandoned property does not offend the Fourth Amendment."); *United States v. Lee*, 916 F.2d 814, 818 (2d. Cir.1990) ("When a person voluntarily abandons property, however, he forfeits any reasonable expectation of privacy that he might have had in the property."). Abandonment is a factual determination that turns on the intent of the defendant, based upon all the relevant circumstances relevant to the seized property. *See Lee*, 916 F.2d at 818.

Despite being incarcerated, Ray abandoned the Laptop. As the Ninth Circuit has recognized, even a defendant who is incarcerated may abandon property where he did not provide "any instructions as to what . . . to do with [the laptop]." *United States v. Zacherle*, 689 F. App'x 467, 468 (2d Cir. 2017). Here, there is no indication that Ray directed Pollok to deliver his laptop to his father's house, or that he made any effort to have someone (like his attorney) take custody of the laptop on his behalf. Instead, the Laptop sat in his father's home for more than a year, without anyone retrieving it on Ray's behalf. Indeed, in his present motion, Ray disclaims that a jail call between Ray and his father to "index" evidence is any indication that he was providing instructions to his father about the Laptop. (Dkt. 239 at 3 n.2).

### B. The Search of the Laptop was Conducted Pursuant to *Two* Judicially-Authorized Search Warrants Supported by Probable Cause and Executed in Good Faith

The search of the Laptop was authorized by two search warrants—a premises warrant to search Larry's father's residence (the "Residence") for the Laptop and to seize/search the Laptop if found (the "First Warrant"), and a second warrant executed once the Laptop was seized, providing additional authorization to search the Laptop (the "Second Warrant")—each supported by probable cause. As a threshold matter, Ray has no standing to challenge the probable cause to search the residence where the Laptop was found (the "Residence"), because the Residence is not his, but his father's.

As for the Laptop, there was ample probable cause to seize it. The First Warrant set forth probable cause that Ray used a laptop and other electronics in the commission of the subject offenses. It also included information from Female Victim-2 about the Laptop, including information about Ray's use of the Laptop in the commission of the subject offenses, and about the Laptop's storage at the Residence over an extended period of time: specifically, Female Victim-2 had personal knowledge that the Laptop was left at the Residence, and that it was stored there in a computer bag. *See* Def Ex. A at 7-8.[2]

---

[2] Ray argues that the warrant failed to "explain why it was reasonable to believe that the [black laptop] bag" that Female Victim-2 observed at the Residence "contained the specific computer described in the warrant application." (Dkt. 239 at 2). But this misconstrues the probable cause in the warrant affidavit, which stated that Female Victim-2 "saw the Subject Device in a black laptop bag in the living room" of the Residence, not that she had simply seen a black laptop bag and assumed the laptop was inside. *See* Def. Ex. A at 8. In any event, had Female Victim-2 only

Ray claims that the nexus to the Residence was "stale" (Dkt. 239 at 3 n.2), but any staleness argument pertains to probable cause to search the Residence (which Ray has no standing to challenge), not to seizure of the Laptop. And, in any event, the information was sufficiently recent to support probable cause. *See* Def. Ex. A at 7-10 ¶¶ 18-19, 25. Once inside the Residence, there was ample basis to seize the Laptop, which was the same make/model as that described in the First Warrant (a silver, 17-inch Macbook Pro laptop) and located in the place anticipated by the First Warrant. This is all the more true because Ray's father confirmed—before it was seized—that the Laptop was indeed the same for which seizure was authorized by the First Warrant.

The First Warrant also authorized search of the Laptop after it was seized, but the Government nonetheless obtained the Second Warrant prior to searching the Laptop, which only further strengthened the probable cause to search the Laptop.[3] Specifically, the Second Warrant set forth developments subsequent to the Laptop's seizure that further demonstrated the Laptop belonged to Ray and was the same laptop identified by Female Victim-2 and used by Ray to commit the subject offenses. Namely, Ray's father had identified the Laptop as the one left at the Residence by Pollok (further corroborating Female Victim-2), the Laptop was still in the white rubber case in which Female Victim-2 had seen Ray's laptop, and the home screen of the Laptop indicated that the user was "Lawrence Ray." Def. Ex. B at 10-11.

Regardless, the evidence seized pursuant to the First and Second Warrants should not be suppressed because the warrants were relied upon in good faith and Ray has not overcome the presumption of good-faith reliance. Far from demonstrating that the First Warrant was deficient, the execution of the Laptop search pursuant to the Second Warrant demonstrates particular care and effort to comply with the Fourth Amendment and to search the Laptop on the basis of all available information supporting probable cause prior to the search. As with the prior warrants, the defendant has not demonstrated that the First and Second Warrants contained deliberate falsehoods that would warrant a *Franks* hearing.

### C. The Warrants Were Executed Properly and in Good Faith

The defendant argues that it was overbroad for the First and Second Warrants to allow a "complete review of all ESI" to find the responsive evidence on the Laptop. (Dkt. 239 at 3-4). As with the prior warrants in this investigation, the search of the Laptop was conducted properly and in good faith. (*See* Dkt. 118). All the more so here, the Government acted in good faith where this Court previously held that specific search protocols or the use of specific search terms or methodologies were not required. (*See* Dkt. 184 at 48-51). As before, the law does not require that the Government limit its search only for that evidence it has specific reason to believe will be

---

seen the laptop bag, that would still provide a strong circumstantial basis to conclude that it contained the laptop which Female Victim-2 had seen delivered to the Residence.

[3] The Government's decision to obtain the Second Warrant is not a concession that the First Warrant "did not provide sufficient information connecting the seized device to the probable cause assert," (Dkt. 239 at 3 n.3), but a decision to proceed with extra care, and to conduct a search on the basis of all currently-available probable cause.

November 12, 2021
Page 4

found on the Laptop, but instead permits a search for evidence of the subject offenses once probable cause to search is established.

### D. Conclusion

For the foregoing reasons, the Government respectfully requests the Court deny the defendant's suppression motion.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By: /s/ Danielle R. Sassoon
Danielle R. Sassoon
Mollie Bracewell
Lindsey Keenan
Assistant United States Attorneys
(212) 637-1115