**Federal Defenders**
OF NEW YORK, INC.

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

David E. Patton
*Executive Director*

*Southern District of New York*
Jennifer L. Brown
*Attorney-in-Charge*

December 22, 2021

**VIA ECF**

Honorable Lewis J. Liman
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:  **United States v. Lawrence Ray**
     **20 Cr. 110 (LJL)**

Dear Judge Liman:

    We write to respectfully request that the Court use a juror questionnaire as the first step in the selection of a petit jury in the above-captioned case. Given the highly prejudicial publicity concerning this matter and the sensitive nature of the inquiries for potential jurors in this case, a private, written questionnaire as a foundation for follow-up oral questioning, where warranted, is essential.

    As the Court is aware, Mr. Ray's case has garnered significant pre-trial publicity, including substantial inadmissible information and opinion. Well before his arrest in February 2020, Lawrence Ray was the subject of national media scrutiny. In April 2019, the New York Magazine published a story entitled, "The Stolen Kids of Sarah Lawrence," which cast the complainants in this matter—whose names and faces appear in the article—as young "victims" of "a psychotic con man." Ezra Marcus and James D. Walsh, *The Stolen Kids of Sarah Lawrence*, New York Magazine (Apr. 29, 2019), https://www.thecut.com/2020/02/larry-ray-sarah-lawrence-students.html (last visited Dec. 22, 2021). This piece spurred more press, including at least one nationally televised interview concerning Mr. Ray and the subject of this trial. *See* Morning Joe, *How did an ex-con move into college dorm and manipulate kids?*, MSNBC (May 8, 2019), https://www.msnbc.com/morning-joe/watch/how-did-an-ex-con-move-into-college-dorm-and-manipulate-kids-59177541507 (last visited Dec. 22, 2021). It also caught the attention of Hollywood. A production company purchased the rights to the New York Magazine article about Mr. Ray; in May 2020, a series on the subject was reportedly in development at Amazon. Borys Kit, *Mark Wahlberg, Jason Blum Team to Adapt Hot Article 'The Stolen Kids of Sarah Lawrence'*, The Hollywood Reporter (May 3, 2019), https://www.hollywoodreporter.com/movies/movie-news/jason-blum-mark-wahlberg-adapt-stolen-kids-sarah-lawrence-1207332/ (last visited Dec. 22, 2021); Joe Otterson, *'Stolen Kids of Sarah Lawrence' Series in Development at Amazon*, Variety (May 19, 2020),

Hon. Lewis J. Liman

https://variety.com/2020/tv/news/stolen-kids-of-sarah-lawrence-series-amazon-reed-morano-1203539348/ (last visited Dec 22, 2021).

Since Mr. Ray's indictment, his case has received substantial New York and national press coverage, including in the New York Times. *See* Alan Feuer, *Sarah Lawrence Parent Used Sex Tapes in Extortion, Prosecutors Say*, The New York Times (Feb. 12, 2020), https://www.nytimes.com/2020/02/12/nyregion/sarah-lawrence-larry-ray.html (last visited Dec. 22, 2021); Andrea Salcedo, *What We Know About the Sarah Lawrence Trafficking Case*, The New York Times (Feb. 13, 2020), https://www.nytimes.com/2020/02/13/nyregion/sarah-lawrence-larry-ray.html (last visited Dec. 22, 2021); Benjamin Weiser & William K. Rashbaum, *Sarah Lawrence Parent Accused of Sex Trafficking and Abusing Students*, The New York Times (Feb. 11, 2020), https://www.nytimes.com/2020/02/13/nyregion/sarah-lawrence-larry-ray.html (last visited Dec. 22, 2021); Sharon Otterman, *The Bizarre Life of the Man Accused in the Sarah Lawrence Sex Case*, The New York Times (Feb. 12, 2020), https://www.nytimes.com/2020/02/12/nyregion/larry-ray-sarah-lawrence.html (last visited Dec. 22, 2021); Mary Adeline Dela Cruz, *Sarah Lawrence 'Sex Cult' Leader Forced Follower Into Prostitution To Pocket $2 Million*, LA Times (Oct. 19, 2021), https://www.latintimes.com/sarah-lawrence-sex-cult-leader-forced-follower-prostitution-pocket-2-million-490843 (last visited Dec. 22, 2021); Peter D. Kramer & Swapna Venugopal Ramaswamy, *College baffled as to how accused trafficker lived in daughter's dorm*, USA Today (Feb. 21, 2020), https://www.usatoday.com/story/news/nation/2020/02/21/how-did-ex-convict-larry-ray-live-sarah-lawrence-college-unnoticed/4833120002/ (last visited Dec. 22, 2021).

Many of these articles adopt prejudicial, inflammatory headlines. A number of stories reflect Mr. Ray's prior criminal record, labeling him an "ex-con," *see, e.g.*, NBC New York, *Woman Charged In Ex-Con's Plot to Extort Daughter's College Friends, Force Into Prostitution, Labor* (Jan. 30, 2021), https://www.nbcnewyork.com/news/local/crime-and-courts/woman-charged-in-ex-cons-plot-to-extort-daughters-college-friends-force-into-prostitution-labor/2856692/ (last visited Dec. 22, 2021); Carolyn Thompson, *How did ex-con get away with living in his daughter's dorm?*, ABC News (Feb. 19, 2020), https://abcnews.go.com/US/wireStory/con-living-daughters-dorm-69077797 (last visited Dec. 22, 2021); Peter D. Kramer, *Sarah Lawrence College sex and extortion: Inside the federal case against ex-convict*, USA Today (Feb. 12, 2020), https://www.usatoday.com/story/news/nation/2020/02/12/sarah-lawrence-sex-extortion-lawrence-ray-indictment-details/4743650002/ (last visited Dec. 22, 2021), while one outright brands Mr. Ray a "monster," James D. Walsh, *What It Was Like to Face the Monster of Sarah Lawrence*, New York Magazine (Oct. 21, 2021), https://nymag.com/intelligencer/2021/10/larry-ray-sarah-lawrence-interviews.html (last visited Dec. 22, 2021), and yet another headline calls attention to allegations of witness tampering—a crime Mr. Ray is not charged with committing, Benjamin Weiser, *Suspect in Sarah Lawrence Cult Case Is Accused of Witness Tampering*, The New York Times (Aug. 26, 2020), https://www.nytimes.com/2020/08/26/nyregion/larry-ray-sarah-lawrence.html (last visited Dec. 22, 2021).

Hon. Lewis J. Liman

Further, the recent federal prosecution of Keith Raniere, the leader of Nxivm, increases the attendant risk of prejudice to Mr. Ray's right to a fair trial. Earlier this year, Mr. Raniere was tried—and convicted—in the Eastern District of New York for conduct similar to the accusations against Mr. Ray. Given the overlapping allegations, multiple outlets have likened Mr. Ray's case to Mr. Raniere's nefarious "cult." For instance, the New York Post reported, "Officials charge that Ray created a Nxivm-like sex cult to prey on his daughter's classmates at Sarah Lawrence— using psychological torture and physical violence to keep his victims in line." Rebecca Rosenberg, *Judge delays trial of alleged Sarah Lawrence sex-cult leader Lawrence Ray*, New York Post (Sept. 4, 2020), https://nypost.com/2020/09/04/judge-delays-trial-of-alleged-sex-cult-leader-lawrence-ray/ (last visited Dec. 22, 2021). The New York Times has also compared Mr. Ray with Mr. Raniere. *See* Benjamin Weiser & Ezra Marcus, *She Was Seen as a Victim in the Sarah Lawrence Cult Case. Now She's Charged.*, The New York Times (Mar. 1, 2021), https://www.nytimes.com/2021/03/01/nyregion/lawrence-ray-sarah-lawrence-cult.html (last visited Dec. 22, 2021). And another article referred to Lawrence Ray as "[t]he homeless ex-con who turned his daughter's dormitory into a sex cult." Aja Romano, *9 wild cult stories to get lost in*, Vox (Dec. 30, 2020), https://www.vox.com/22195361/cult-stories-like-nxivm-documentaries (last visited Dec. 22, 2021). Given the national attention paid to the Nxivm case, comparisons to Mr. Ray's conduct heighten the risk of prospective jurors' exposure to inadmissible information and opinion and underscore the need for an additional layer of protection in this jury selection process.

Significantly, it is not only traditional media outlets that have vilified Mr. Ray publicly ahead of trial. In September, "Male Victim-1," as he is identified in the original indictment against Mr. Ray, published a book about his experience with Mr. Ray. This tome—*Slonim Woods 9*, named for the residential facility at Sarah Lawrence College—is billed as a memoir. In it, the complainant details the very subject matter about which he is expected to testify at trial. Promoting his book, this individual has repeatedly spoken publicly to a variety of audiences about the allegations against Mr. Ray. *See, e.g.*, Sophia June, *The Chilling World of 'Slonim Woods 9'*, Nylon, https://www.nylon.com/life/slonim-woods-9-████████████ (last visited Dec. 22, 2021); Community Bookstore Live, ████████████ *presents 'Slonim Woods 9,' with Rebecca Sacks* (Sept. 16, 2021), https://www.youtube.com/watch?v=_1AXLm_6zRY (last visited Dec. 22, 2021); Peter D. Kramer, *Book describes inside Slonim Woods 9, where Sarah Lawrence dad Larry Ray's sex cult began*, lohud.com (Sept. 2, 2021), https://www.lohud.com/story/news/2021/09/02/new-book-takes-reader-inside-sarah-lawrence-college-sex-cult/8254587002/ (last visited Dec. 22, 2021). In addition, at least one other likely trial witness gave a nationally televised interview about Lawrence Ray ahead of trial. *See* Dr. Oz Show, *Breaking News: Father Charged With Running Sex Cult Ring Using Daughter's Sarah Lawrence College Classmates*, https://www.drozshow.com/episode/breaking-news-father-charged-running-sex-cult-ring-using-daughter-s-sarah-lawrence-college/particle-1 (last visited Dec. 22, 2021).

This pretrial publicity threatens Mr. Ray's Fifth and Sixth Amendment rights to a trial before a group of 12 impartial individuals who have not been exposed to inadmissible information, such as the alleged victims' narrative and Mr. Ray's criminal history.

Hon. Lewis J. Liman

In addition, the nature of the allegations against Mr. Ray demand a more searching and thoughtful jury selection process here. Mr. Ray is accused of sex trafficking, with allegations that he "directed" an individual "to engage in sex acts" with another person while Mr. Ray observed, and that an alleged victim for years "worked as a prostitute" at Mr. Ray's command. Dkt. 2. The evidence in this case is replete with sexually explicit content, including videos, photographs, and text messages, which prospective jurors may for any number of personal reasons be incapable of reviewing impartially during a weeks-long trial.

A written questionnaire would permit the Court and the parties, as an initial matter, to elicit information essential to voir dire in the particular circumstances of this case in a private setting. This includes potential jurors' exposure to publicity, their discomfort with sexually explicit photographs or videos, and their own histories of sexual abuse or exploitation. Beginning with a written questionnaire is more likely to allow jurors to feel safe in disclosing uniquely personal information, as well as voicing views about the allegations in this case, which may trigger strong reactions that they may hesitate to disclose in a public courtroom. The Court must take care to elicit critical information about individuals' experiences with sexual abuse in the most respectful and confidential way possible.

Information provided in the written questionnaires would allow both greater efficiency and a more searching voir dire. It would allow greater efficiency because, for example, any juror aware of information, such as publicity or the contents of Male Victim-1's book, that is not admissible in the criminal trial, would have to be excused for cause. Eliciting this in a written questionnaire would allow the Court to excuse such jurors in advance of the oral voir dire, which would lessen the risk of the broader venire learning of this inadmissible information, while streamlining the oral voir dire process.

A written questionnaire would also permit for a more efficient voir dire—one which would better achieve the goals of the jury selection process—because it would allow jurors to identify for the Court and the parties, outside the presence of the rest of the jury and assembled public (including media), whether they have personally experienced sexual abuse or whether they have been accused of sexual abuse or harassment. The Court could then ask such responding jurors targeted follow-up questions based on the jurors' specific answers to the questionnaire while simultaneously lessening the risk of jurors not disclosing relevant personal information because of a fear of public exposure. Mr. Ray's right to an impartial jury free of preconceived notions based on publicity and the alleged victim's published memoir is most effectively and substantively vindicated through a written questionnaire.

No countervailing interest justifies a less careful approach to jury selection in this case. The government has indicated to defense counsel that it does not support the use of a written questionnaire based on efficiency concerns. However, in this district, the government has agreed to the use of a written questionnaire in recent and upcoming high-profile cases in part to vindicate the interest in efficiency. *See United States v. Ghislaine Maxwell*, 20 Cr. 330 (AJN); *United States* v. *Michael Avenatti* (I) 19 Cr. 373 (PGG) (extortion prosecution); *United States* v. *Michael Avenatti* (II), 19 Cr. 374 (JMF) (trial set to commence January 24, 2022). In *Maxwell*, oral voir dire took less than three days following the parties' and Court review of the written

Hon. Lewis J. Liman

questionnaires. *See* Minute entries for 11/16/2021, 11/17/2021 and 11/28/2021, 20 Cr. 330 (AJN). In the first *Avenatti* trial, oral voir dire took less than a single day following the review of the written questionnaires. *See* Minute entry for 01/27/2020, 19 Cr. 373 (PGG).

The parties can work together on a joint questionnaire and submit it to the Court so that it may be completed by prospective jurors on or before the March 8, 2021 trial date. For example, in the upcoming *Avenatti* trial, Judge Furman has ordered that the pool of prospective jurors will complete the questionnaire approximately one week prior to oral voir dire.[1] *See United States v. Avenatti*, 19 Cr. 374 (JMF), ECF No. 160.

Logistically, we ask that the Court follow the procedures similar to those requested by the government in *United States v. Avenatti* in order to protect juror privacy and Mr. Ray's right to examine potential jurors while preventing juror taint. *Id.* ECF No. 46. Generally, the jury selection steps would be:

1. Court-authorized juror questionnaires drafted by the parties administered to prospective jurors with prerecorded instructions from the Court;
2. Parties review juror questionnaire responses and submit their agreed upon and individual lists of strikes for cause to the Court;
3. Prospective jurors who have not been stricken for cause remain for oral voir dire.

Thank you for your consideration of this request.

Respectfully submitted,

/s/

Marne L. Lenox, Esq.
Peggy Cross-Goldenberg, Esq.
Allegra Glashausser, Esq.
Neil P. Kelly, Esq.

*Counsel for Lawrence Ray*

cc:     Counsel of record

---

[1] Should the Court advance the start of jury selection to have prospective jurors complete a juror questionnaire ahead of the March 8, 2022 trial date, the disclosure dates tied to the start of trial, including the 3500 deadline, should be moved up accordingly, given the volume of materials we must review with Mr. Ray.