

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

January 5, 2022

**BY ECF**
The Honorable Lewis J. Liman
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    *United States v. Lawrence Ray*, S1 20 Cr. 110 (LJL)

Dear Judge Liman:

    Thus far, in discussions with the defense, the defense has demurred on committing to a deadline for reciprocal discovery in advance of trial. The Government respectfully requests that the Court set a pretrial deadline for reciprocal discovery.

### I. Applicable Law

    The defendant's general reciprocal discovery obligation is set forth under Rule 16(b)(1)(A):

> If a defendant requests disclosure under Rule 16(a)(1)(E) and the government complies, then the defendant must permit the government, upon request, to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items if:
>
> (i) the item is within the defendant's possession, custody, or control; and
>
> (ii) the defendant intends to use the item in the defendant's case-in-chief at trial.

    A defendant's case-in-chief includes evidence the defense tries to introduce through cross-examination of Government witnesses that is not used for impeachment purposes: "where a defendant cross-examines a government witness to 'buttress[ ] her theory of the case,' rather than to impeach the testimony given by the witness on direct examination, '[t]he cross-examination ... is properly seen as part of the defendant's case-in-chief.'" *United States v. Napout*, 2017 WL 6375729, at *7 (E.D.N.Y. 2017) (quoting *United States v. Hsia*, 2000 WL 195067, at *1 (D.D.C. 2000)). "[T]here is general consensus among courts that if a defendant seeks to present

affirmative (non-impeachment) evidence through a government witness during the government's case in chief, the defendant's presentation of evidence during such an examination should be treated as part of the defendant's 'case-in-chief' for purposes of the defendant's disclosure obligations under Rule 16." *Id.*

It is thus well-established that any material introduced for a non-impeachment purpose constitutes the defendant's "case-in-chief," whether the material is introduced during the Government's case through cross-examination of witnesses or through defense witnesses after the Government rests. *See, e.g., United States v. Ellison,* 704 F. App'x 616, 625 (9th Cir. 2017), cert. denied, 138 S. Ct. 2675 (2018) ("The district court properly refused to limit Appellants' production obligation to those exhibits they planned to introduce with their own witnesses by refusing to cabin their "case-in-chief" to the period after which they called their first witness at trial, because a defendant may establish his defense by cross-examining the government's witnesses."); *United States v. Young*, 248 F.3d 260, 269 (4th Cir. 2001) (affirming preclusion of evidence not produced to the Government because although "[d]efense counsel did attempt to offer the tape during his cross-examination of Henderson, . . . the record supports the district court's conclusion that Young intended to offer the tapes not for impeachment purposes, but as 'evidence in chief' that Henderson committed the crime").

As another district court recently noted:

> If "case-in-chief" exclusively covered materials introduced after the government rests, then whenever defendants present substantive, non-impeachment, evidence during cross-examination to prove their case—a "standard modern trial practice" that can hardly be abandoned, *United States v. Holden*, No. 13-cr-444, 2015 WL 1514569, at *3 (D. Or. Mar. 19, 2015)—such evidence would not be subject to Rule 16(b) pretrial disclosure. But to permit defendants to evade pretrial disclosure simply by presenting much (or all) of their case-in-chief before the government rests would frustrate the practical intentions behind Rule 16: to avoid unfair surprise and unwarranted delay by providing both the government and the defense with a broad, reciprocal, right to discovery. *See generally* Fed. R. Crim. P. 16 advisory committee's note to 1974 amendment.

> Nearly every court to consider the issue has concluded the same. *See, e.g., United States v. Hsia*, No. 98-57, 2000 WL 195067, at *2 (D.D.C. Jan. 21, 2000) ("[E]vidence [introduced] through cross-examination that the Court finds is part of [defendant's] case-in-chief" is subject to Rule 16(b) disclosure); *United States v. Napout*, No. 15-252, 2017 WL 6375729, at *7 (E.D.N.Y. Dec. 12, 2017) ("Rule 16 requires Defendants to identify all non-impeachment exhibits they intend to use in their defense at trial, whether [or not] the exhibits will be introduced through a government witness."); *United States v. Aiyaswamy*, No. 15-568, 2017 WL 1365228, at *5 (N.D. Cal. Apr. 14, 2017) ("Defendant must disclose and produce substantive, non-impeachment evidence under Rule 16(b), whether ... [to be] introduce[d] during cross-examination or after the Government rests.");

> *Holden*, 2015 WL 1514569, at *2 (same); *United States v. Larkin*, No. 12-319, 2015 WL 4415506, at *5 (D. Nev. July 20, 2015) (same); *United States v. Swenson*, 298 F.R.D. 474, 476 (D. Idaho 2014) (same). Accordingly, the Court finds that the phrase "case-in-chief" in Rule 16(b)(1)(A) refers to any substantive evidence Brumfield affirmatively intends to introduce to prove her theory of the case or defenses, as opposed to for the purpose of impeachment only, regardless of when during the trial such evidence will be offered.

*United States v. Crowder*, 325 F. Supp. 3d 131, 136 (D.D.C. 2018). In reaching the same conclusion, another district court noted that an article in *The Champion*, the journal of the National Association of Criminal Defense Lawyers, explained that:

> Rule 16 defines a defendant's case-in-chief as occurring whenever a defendant presents evidence for a nonimpeachment purpose, both during and after the government's case. Where the defense attorney cross-examines a government witness, for instance, any exhibit introduced for a purpose other than impeaching that witness may be viewed as the defendant's evidence-in-chief. Especially if the defense also intended to call that witness, its cross-examination can quickly become part of its case-in-chief under Rule 16, regardless of whether the government has rested its case. Any evidence introduced for a nonimpeachment purpose during that cross-examination, or after the government rests, must have been turned over ahead of time.

*Swenson*, 298 F.R.D. at 476 (quoting Sara Kropf, et al., The "Chief" Problem With Reciprocal Discovery Under Rule 16, *The Champion*, Oct. 2010, at 20, *available at* http://storage.cloversites.com/lawofficeofsarakropf/documents/Rule%2016%20article.pdf). The same article noted that reciprocal discovery is particularly appropriate, in a case such as this one, where the defendant may assert an affirmative defense:

> A defendant's case-in-chief undoubtedly includes evidence he intends to offer in support of an affirmative defense, such as alibi or insanity. This makes some sense. The defendant bears the burden of proof on these issues. The existence and scope of these affirmative defenses have little to do with how the government puts on its case, and a defendant will have spent time before trial marshaling evidence in support of them. Moreover, the evidence may include materials that are in the defendant's exclusive possession, and fairness dictates disclosure to the government.

Kropf, et al., *supra* at 22.

## II. Discussion

The Government respectfully requests that the Court impose a pretrial deadline for reciprocal discovery from the defense. Such discovery would include, for example, evidence the defense intends to introduce from the extracted devices that was not included in the Government's

responsive subset.[1] It would also include the "results or reports of any physical or mental examination" that is within the defendant's "possession, custody, or control," where the defendant "intends to use the item in the defendant's case-in-chief at trial, or intends to call the witness who prepared the report and the report relates to the witness's testimony." Fed. R. Crim. P. 16(b)(1)(B). Such a deadline is particularly appropriate here, where the defense has indicated that it may raise various affirmative defenses. Moreover, to the extent the defense seeks to advance its case-in-chief through cross-examination of Government witnesses—and the Court permits the defense to do so—it is all the more imperative that discovery be produced in advance of trial. If the defendant establishes a legally admissible defense with respect to his mental condition or an advice-of-counsel defense, evidence related to those claims is properly considered part of the defendant's case-in-chief, regardless of when that evidence is introduced at trial. Those are issues as to which the defendant has the burden—either of proof at trial or admissibility before trial—and the Government should be allowed to review the evidence the defense intends to introduce and be afforded an opportunity to contest either its validity or its admissibility.[2]

With respect to the defendant's potential advice-of-counsel defense, the Government further requests that to the extent the defense does not unequivocally assert an advice-of-counsel defense prior to the start of the Government's case-in-chief, it should be precluded from advancing that defense through cross-examination of the Government's witnesses. Such questioning (and any accompanying exhibits) would be a backdoor for the defense to advance its case-in-chief without waiving privilege or satisfying the legal elements of an advice-of-counsel defense, and it would deny the Government an opportunity to litigate the validity of the defense and the propriety of the defendant's introduction of such evidence. *See* Fed. R. Evid. 104(a); *Bourjaily v. United States*, 483 U.S. 171, 175 (1987); *see also United States v. Brooks*, No. 08 Cr. 35 (PKL), 2008 WL 2332371, at *1 (S.D.N.Y. June 4, 2008) ("As the proponent of the proposed testimony, defendant has the burden of establishing admissibility by a preponderance of the evidence."); *United States v. Sabir*, No. S4 05 Cr. 673 (LAP), 2007 WL 1373184, at *6 (S.D.N.Y. May 10, 2007) (the "burden of showing that proffered testimony is offered to negate the *mens rea* element of a crime and not in support of some improper defense theory falls squarely on the defendant" (internal quotation marks omitted)); *United States v. Camacho*, 353 F. Supp. 2d 524, 536 (S.D.N.Y. 2005) ("defendants as proponents of the evidence bear the burden of [admissibility]").

If the defendant intends to advance this defense through the Government's witnesses, it would be appropriate for the court to consider whether such a defense is legally sufficient before it is put before the jury. "[N]o proper interest of the defendant would be served by permitting his legally insufficient evidence to be aired at trial, and interests of judicial economy suggest that the jury should not be burdened with the matter." *United States v. Villegas*, 899 F.2d 1324, 1343 (2d Cir. 1990); *see also* Fed. R. Evid. 103(d) ("To the extent practicable, the court must conduct a jury trial so that inadmissible evidence is not suggested to the jury by any means."). A preliminary hearing may be ordered to consider a proffered advice-of-counsel defense just as it may be ordered

---

[1] Apart from the responsive material, the remainder of the extraction is no longer in the Government's "possession."

[2] The Court set a deadline of November 29, 2021, for the defense to produce non-privileged materials related to its advice-of-counsel defense. (Dkt. 257). The defense indicated it had no such material to produce, and has made no such production to date.

to consider any other defense. *See United States v. Scali*, No. 16 Cr. 466 (NSR), 2018 WL 461441, at *8 n.4 (S.D.N.Y. Jan. 18, 2018) ("Guided by efficiency and judicial economy, it behooves the Court to address [advice of counsel] before trial.").

Furthermore, given the facts of this case, this concern is not unduly speculative. The defendant had several of his victims meet with his attorney throughout the criminal scheme. The defendant also made statements to victims about supposed advice from his attorney. He had one victim sign a false affidavit notarized by his attorney, and the attorney represented the defendant with respect to the housing court litigation, during which several victims testified falsely under oath. It is therefore not farfetched that the defense may seek to ask these victims questions about their interactions with the attorney or statements the defendant made about his attorney's supposed advice. Such questions would confuse and mislead the jury, especially absent first satisfying the requirements of an advice-of-counsel defense.[3] The risk of unfair prejudice is also particularly high if the jury is given the false impression that the defendant was acting under the imprimatur of his attorney. While a limiting instruction might mitigate the unfair prejudice caused by such questions, an *in limine* ruling would spare the jury from being exposed to this highly prejudicial information in the first place.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By: __/s/ Danielle R. Sassoon____
Mollie Bracewell
Danielle R. Sassoon
Lindsey Keenan
Assistant United States Attorneys
Southern District of New York
(212) 637-1115

cc: Defense Counsel (by ECF)

---

[3] The Government failed to spell out these details in its original motion regarding the advice-of-counsel defense, and appreciates the opportunity to explain those concerns now. Indeed, cloaking his actions in the false patina of attorney approval appears to have been one of the many tactics the defendant used to gaslight his victims and to insulate his criminal conduct from scrutiny.