UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>- v. -<br><br>LAWRENCE RAY,<br><br>                    Defendant. | No. 20 Cr. 110 (LJL) |

**LAWRENCE RAY'S MOTION *IN LIMINE* NO. 4**

David E. Patton, Esq.
Federal Defenders of New York, Inc.
52 Duane Street - 10th Floor
New York, New York 10007
Tel.: (212) 417-8700

*Counsel for Lawrence Ray*

**ALLEGRA GLASHAUSSER, ESQ.**
**MARNE L. LENOX, ESQ.**
**PEGGY CROSS-GOLDENBERG, ESQ.**
**NEIL P. KELLY, ESQ.**
*Of counsel*


To:   **DAMIAN WILLIAMS, ESQ.**
       United States Attorney
       Southern District of New York
       One St. Andrew's Plaza
       New York, New York 10007

       Attn:   **DANIELLE R. SASSOON, ESQ.**
                Assistant United States Attorney
                Southern District of New York

**TABLE OF CONTENTS**

**Page**

ARGUMENT ................................................................................................................................. 1

I.     The Court Should Preclude Trial Participants from Referring to the Complaining Witnesses as "Victims" ..................................................................................................... 1

II.    The Court Should Preclude Trial Participants from Using Language that Reflects A Legal Conclusion for the Jury or Inflammatory, Confusing, and Unduly Prejudicial Language .......................................................................................... 4

CONCLUSION .............................................................................................................................. 7

Lawrence Ray respectfully submits this motion *in limine* in advance of trial scheduled for March 8, 2022. Mr. Ray moves the Court for an order precluding all trial participants from referring to the complaining witnesses as "victims" or using inflammatory, sensational, confusing, and unduly prejudicial language or language that reflects a legal conclusion as to the ultimate issues in the case.

## ARGUMENT

### I. The Court Should Preclude Trial Participants from Referring to the Complaining Witnesses as "Victims"

As the Court will doubtlessly instruct the jury at the commencement of the trial in this matter, under our system of criminal justice and the United States Constitution, Mr. Ray is presumed innocent unless and until the government proves all elements of the alleged offenses beyond a reasonable doubt. *See* U.S. Const. amend. V; *In re Winship*, 397 U.S. 358, 364 (1970). The issue of whether Mr. Ray committed any offenses against the complaining witnesses, and thus whether there are any "victims" in this case at all, has not yet been determined. Indeed, that is the very issue for the jury to decide at trial, and that decision must be based on competent, admissible evidence and not on the government's labeling of certain individuals. Accordingly, the Court should preclude all trial participants from making any references to the complaining witnesses as "victims," as the government has constantly and repeatedly done in its written submissions and oral arguments to date. Such references are, at best, unnecessary, and at worst, improper, and will needlessly and unfairly prejudice the jury against Mr. Ray. *See, e.g.*, *United States v. Wagner*, 20 Cr. 410 (NSR), 2022 WL 19179, at *6 (S.D.N.Y. Jan. 3, 2022) (granting defense motion to preclude government from using the word "victim" during trial).

Complaining witnesses in some criminal cases are indisputably "victims" of a crime. For example, when someone has been shot, stabbed, or robbed, and the only question is who

committed the underlying act, the complaining witness has clearly been the "victim" of something. *See, e.g.*, *Jackson v. State*, 600 A.2d 21, 24 (Del. 1991) (noting that "[t]he term 'victim' is used appropriately during trial when there is no doubt that a crime was committed and simply the identity of the perpetrator is in issue"). However, in cases like this, where the defendant denies that any wrongful conduct took place at all, the government must prove beyond a reasonable doubt that the complaining witnesses are, in fact, "victims" by proving that an offense has been committed. Allowing trial participants to refer to the complaining witnesses as "victims" before the jury has made the determination that Mr. Ray committed any criminal conduct would presuppose the jury's potential conclusion, violate the presumption of innocence, and lessen the government's constitutionally mandated burden of proof.

Applying this bedrock principle, courts frequently hold that the government and its witnesses should not be permitted to refer to complaining witnesses as "victims" before the jury reaches its verdict. For example, in a case involving alleged sexual abuse, the Oregon Supreme Court reversed the defendant's conviction because the trial court refused to prohibit the government's witnesses from referring to the complainant and other women as the defendant's "victims." *State v. Sperou*, 442 P.3d 581, 585 (Or. 2019). As the court explained, "where defendant's theory of the case was that no abuse had occurred and that [the complainant and other women] were either lying or mistaken, the use of the word 'victim' by the state's witnesses amounted to impermissible vouching, and the trial court should have granted defendant's motion to preclude such references." *Id.* The court further held that the use of the word "victim" "undermine[s] the presumption of defendant's innocence because it assumes defendant's guilt, a fact that is necessarily not proved until the jury finds the defendant guilty." *Id.* at 590. The Oregon Supreme Court held that such "undermining [of] the presumption of innocence may

2

deprive a defendant of a fair trial under the . . . federal constitution[], as repetitious use of the term 'victim' implicitly reinforces to the jury that defendant has harmed the accusers." *Id.*

Similar rulings have been issued by courts nationwide, which have recognized that allowing trial participants to refer to complaining witnesses as "victims" inherently bolsters such witnesses by providing an imprimatur of credibility to their claims that the defendant victimized them. This, in turn, undermines "the constitutional right to the presumption of innocence." *State v. Devey*, 138 P.3d 90, 95 (Utah App. Ct. 2006) (holding that in cases where a defendant claims that charged crime did not actually occur and government's case was based on complaining witness testimony, "the trial court, the State, and all witnesses should be prohibited from referring to the complaining witness as 'the victim'"); *see, e.g.*, *Allen v. State*, 644 A.2d 982, 983 n.1 (Del. 1994) ("[W]hen, as here, consent is the sole defense in a rape case, the use of the term 'victim' by a prosecutor at trial is improper and to be avoided."); *Jackson*, 600 A.2d at 24 ("We agree with defendant that the word 'victim' should not be used in a case where the commission of a crime is in dispute."); *State v. Nomura*, 903 P.2d 718, 721 (Haw. App. Ct. 1995) ("[T]he term 'victim' is conclusive in nature and connotes a predetermination that the person referred to had in fact been wronged. Because the question of whether Witness had been abused was a question yet to be decided by the jury, it was improper to refer to her as 'the victim.'"); *State v. Wright*, No. 02 CA 008179, 2003 WL 21509033, at *2 (Ohio App. Ct. July 2, 2003) ("[T]he trial court should refrain from using the term 'victim,' as it suggests a bias against the defendant before the State has proven a 'victim' truly exists."); *State v. Wigg*, 889 A.2d 233, 236 (Vt. 2005) ("[W]here the commission of a crime is in dispute and the core issue is one of the complainant's credibility, it is error for a trial court to permit a police detective to refer to the complainant as the 'victim.'"); *cf. State v. Albino*, 24 A.3d 602, 617 (Conn. App. Ct. 2011) ("When there is no

3

doubt that a homicide occurred and that the defendant was the person who caused it to occur, and the only question for the jury is whether the homicide was justified, . . . repeated reference to the 'victim,' . . . amounts to an opinion on the ultimate issue of the case.").

Accordingly, the Court should order that no trial participant may refer to the complaining witnesses as "victims," with the exception of permissible argumentation in summations.[1]

## II.     The Court Should Preclude Trial Participants from Using Language that Reflects A Legal Conclusion for the Jury or Inflammatory, Confusing, and Unduly Prejudicial Language

For similar reasons, trial participants should not be permitted to use words or terms that embrace and subsume the ultimate legal issues to be decided by the jury. Allowing trial participants to loosely use such words and phrases not only poses a grave risk of prejudice, but also threatens to intrude upon the Court's role in instructing the jury on the applicable law and the jury's role in applying the law to the facts before it. The Court should preclude the government and its witnesses from using conclusory terms in order to ensure that the Court's function in instructing the jurors on the law is not usurped, the jurors are not misled, and Mr. Ray is not denied a fair trial.

The Second Circuit has warned that trial participants should not use language that reflects a legal conclusion because such statements present a risk of conveying the speaker's unexpressed and perhaps erroneous legal standards to the jury. For example, in *United States v. Scop*, 846

---

[1] We respectfully request that the Court too should be mindful not to refer to the complaining witnesses as "victims" before the jury because:

> [a] judicial reference to the jury that a complaining witness is a 'victim' implicitly tells the jury that the judge believes that a crime has been committed. For a judge to communicate to the jury that witnesses were victimized, in a case where the defense is that the conduct about which the complaining witness testifies never occurred, prejudices that defendant unfairly.

*Fritzinger v. State*, 10 A.3d 603, 610 (Del. 2010).

4

F.2d 135 (2d Cir. 1988), the Circuit reversed convictions when the trial court allowed a government expert witness in a securities fraud case to repeatedly use words like "manipulation," "scheme to defraud," and "fraud," i.e., statutory and regulatory language that is not "self-defining," is "subject of diverse judicial interpretation," and is "indicating guilt." *Id.* at 140–42. The Circuit further held that this testimony was not helpful to the jury, but was "calculated to 'invade the province of the Court to determine the applicable law and to instruct the jury as to that law.'" *Id.* at 140 (quoting *F.A.A. v. Landy*, 705 F.2d 624, 632 (2d Cir. 1983)).

Similarly, in *Hygh v. Jacobs*, 961 F.2d 359 (2d Cir. 1992), the Circuit made clear that testimony expressing a legal conclusion, whether explicitly or implicitly, should be excluded: "This circuit is in accord with other circuits in requiring exclusion of expert testimony that expresses a legal conclusion. . . . Even if a jury were not misled into adopting outright a legal conclusion proffered by an expert witness, the testimony would remain objectionable by communicating a legal standard—explicit or implicit—to the jury." *Id.* at 363–64.

Here, allowing witnesses to testify that the complainants were "brainwashed" or were in a "cult" or were "groomed"—language which presupposes, *inter alia*, a lack of consent—will impermissibly express to the jury the legal conclusion that Mr. Ray committed the conduct he is accused of, including "sexual and psychological manipulation [,] physical abuse," and sex trafficking. *See* Ex. A, Gov't Ltr. to Hon. L. Liman (Jan . 18, 2022).

The defense's concern is not speculation. One of the government's anticipated witnesses—who has published a book about his purported experiences with Mr. Ray and has undertaken a nationwide publicity tour to promote sales of his book—has repeatedly referred to his experiences as having been "in a cult," claims he was "brainwashed," and alleges that Mr. Ray "groomed" the complaining witnesses. *See, e.g.*, P. Kramer, "Book Describes Inside Slonim

5

Woods 9, Where Sarah Lawrence Dad Larry Ray's Sex Cult Began," Westchester J. News (Sept. 2, 2021), *available at* https://www.lohud.com/story/news/2021/09/02/new-book-takes-reader-inside-sarah-lawrence-college-sex-cult/8254587002/ (last visited Jan. 31, 2022); M. E. Williams, "'Nobody Joins A Cult. They Join A Group of Friends': What Went Down in the 'Sarah Lawrence Cult,'" Salon, https://www.salon.com/2021/09/07/nobody-joins-a-cult-they-join-a-group-of-friends-what-went-down-in-the-sarah-lawrence-cult/ (last visited Jan. 31, 2022). The government and its witnesses should not be permitted to resort to such inflammatory, argumentative, and legally conclusory language that raises a significant risk of juror confusion and conviction based on improper reasons. *See* 2 WEINSTEIN'S FEDERAL EVIDENCE § 403.04[1][b] ("Unfairness may be found in any form of evidence that may cause a jury to base its decision on something other than the established propositions in the case. . . . Prejudice is also unfair if the evidence was designed to elicit a response from the jurors that is not justified by the evidence.").

In addition, even when underlying testimony and evidence is itself admissible, "courts often prohibit the use of certain 'pejorative terms when such categorizations [are] inflammatory and unnecessary to prove a claim' and such statements 'do not bear on the issues being tried.'" *MF Global Hold., Ltd. v. PricewaterhouseCoopers LLP*, 232 F. Supp.3d 558, 570 (S.D.N.Y. 2017) (quoting *Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Ams.*, No. 04 Civ. 10014 (PKL), 2009 WL 3111766, at *7 (S.D.N.Y. Sept. 28, 2009)). Here, the government claims that it has ample evidence that Mr. Ray engaged in a range of criminal conduct. It should be required to prove its case based on competent, admissible evidence, and not make use of confusing, unnecessary, and inflammatory terminology that presupposes Mr. Ray's criminal conduct and is unduly prejudicial. *E.g.*, *Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173,

193(S.D.N.Y. 2008) (holding that plaintiffs "may not characterize admissible evidence and testimony as "securities fraud," "illegal," "insider trading," "inside information," and "market manipulation"). Accordingly, the government and its witnesses should not be permitted to use inflammatory terms such as "brainwash," "cult," "gaslighting," "grooming," "lieutenant," or "victim." While Mr. Ray does not move to exclude witness testimony on, *e.g.*, what the complaining witnesses allege they experienced or their responses to such events, the use of these inflammatory terms by the government and its witnesses would have no probative value and would be confusing, unnecessary, prejudicial, and inappropriate. Such terms should be precluded under Federal Rules of Evidence 102, 401, 403, 702, 703, and 704.

## CONCLUSION

For these reasons, the Court should issue an order precluding trial participants from using inflammatory, sensational, confusing, and unduly prejudicial language or language that reflects a legal conclusion as to the ultimate issues in the case that are for the jury to decide.

| | | |
|---|---|---|
| Dated: | January 31, 2022<br>New York, New York | Respectfully submitted,<br><br>/s/ Marne L. Lenox<br>Allegra Glashausser, Esq.<br>Marne L. Lenox, Esq.<br>Peggy Cross-Goldenberg, Esq.<br>Neil P. Kelly, Esq.<br>FEDERAL DEFENDERS OF NEW YORK, INC.<br>52 Duane Street – 10th Floor<br>New York, New York 10007<br>Tel.: (212) 417-8700<br>Allegra_Glashausser@fd.org<br>Marne_Lenox@fd.org<br>Peggy_Cross-Goldenberg@fd.org<br>Neil_Kelly@fd.org<br><br>*Counsel for Lawrence Ray* |