

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

February 17, 2022

**BY ECF**
The Honorable Lewis J. Liman
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:     ***United States v. Lawrence Ray***,
         S2 20 Cr. 110 (LJL)

Dear Judge Liman:

The Government opposes the defendant's request for a *Franks* hearing and respectfully requests that the defendant's motion for reconsideration be denied.

## I.   <u>Applicable Law</u>

A motion for "reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). "The decision to grant or deny a motion for reconsideration is within the sound discretion of the district court." *In re Optimal U.S. Litig.*, 813 F. Supp. 2d, 403 n.6 (S.D.N.Y. 2011).

The law applicable to requests for a *Franks* hearing is set forth in the Court's decision denying the defendant's suppression motions. *See* Dkt. 184 at 21-22.

## II.   <u>The Court's May 26, 2021 Denial of the Defendant's Suppression Motion</u>

This Court originally denied the defendant's suppression motion and request for a *Franks* hearing in a thorough written opinion on May 26, 2021. *See* Dkt. 184. The Court rejected the defendant's assertion that the warrants omitted information regarding Female Victim-1's credibility that would have undermined the showing of probable cause, had it been included in the warrant affidavits. *See* Dkt. 184 at 29, 38-39. With respect to the CSLI warrant, the Court enumerated the six categories of information the defense asserted were omitted from the warrant, and explained why that information did not undermine the warrant. *Id.* at 29. Among those

categories was the following: "FV-1's friends reported that she 'stretched the truth for effect,' and 'wanted to make herself more exciting,' and was the 'best at [] telling stories.'" *Id.* at 29.

The Court held that the defendant failed to identify any "material information" omitted from the warrant and that even with the addition of the omitted information, the warrant affidavit would support probable cause. *Id.* at 30. As the Court explained, the affidavit "contained detailed information that FV-1 provided directly to law enforcement" and that "provided the probable cause necessary to support the CSLI Search Warrant." *Id.* The Court summarized that information. *Id.* at 30-31. The Court also noted that Female Victim-1 was a "percipient witness and victim who provided information directly to law enforcement," that the "information she conveyed would have been personally embarrassing to her and she had no apparent motive to curry favor with the police." *Id.* at 31. The Court explained that a *Franks* hearing was unwarranted because the allegedly omitted information "would not have cast FV-1 in a materially different light or raised issues about her credibility that were not already presented in the CSLI Search Warrant Affidavit." *Id.* at 32. Some of the information concerned the period while Female Victim-1 was under the defendant's control. *Id.* While the "statements about FV-1 from prior to the time she came under his influence . . . are not of the sort that would undermine confidence in FV-1's statements to the FBI in the summer of 2019." *Id.* at 32.

The Court observed that "FV-1's reports to law enforcement cannot be viewed in isolation. The CSLI Search Warrant Affidavit also contained extensive independent evidence from the Article and from sources that corroborated the Article and FV-1 that alone went far in establishing probable cause." *Id.* at 33. Moreover, "while the CSLI Search Warrant reported SA Maguire's view that FV-1 'has been credible and corroborated in part by other evidence,' Dkt. No. 110-1 at 12, that statement cannot be understood as a representation that FV-1 had never lied," particularly where the "CSLI Search Warrant Affidavit reported that FV-1 had lied in the past at the behest of Ray." *Id.* at 36.

The Court also held that the defendant had "made no showing—much less a substantial preliminary showing—that SA Maguire intentionally misrepresented the facts or 'entertained serious doubts as to the truth of [her] allegations.'" *Id.* at 36. The Court observed that:

> The agent did not hide the existence or location of the Article or conceal her reliance on it. She disclosed it prominently including its title, location, and date for anyone to check who wanted to do so. It thus was readily apparent, and available to, the issuing judge. The conduct is exactly the opposite of what one would expect from a party intentionally misrepresenting facts.

*Id.* at 37.

The Court reached similar conclusions with respect to the other warrants, which included a cite to the *New York Magazine* article, as well as other corroborating information. *Id.* at 39.

III.   **Discussion**

The defendant's motion should be denied. This Court originally denied the defendant's suppression motion and request for a *Franks* hearing in a thorough written opinion on May 26, 2021. *See* Dkt. 184. The defendant's motion rests on two categories of information—disclosed in the Government's February 8, 2022 production of 3500 and non-testifying witness materials—that he claims put things in a light. Neither undermines the Court's conclusions and reasoning in its May 26, 2021 opinion.

*First*, the defendant points to notes from an interview of another witness who described hearing things about Female Victim-1 from her high school classmates that supposedly cast doubt on her credibility. This is not, in fact, new data. Far from being additional evidence, these notes duplicate the information about Female Victim-1 described in the *New York Magazine* article, and highlighted by the defense in their original motion to suppress, specifically that "FV-1's friends reported that she 'stretched the truth for effect,' and 'wanted to make herself more exciting,' and was the 'best at [] telling stories.'" *See* Dkt. 184 at 29, 38-39; *id.* at 32 ("Ray notes that FV-1's friends told New York Magazine that, when she was a high school student, FV-1 had a reputation for 'stretch[ing] the truth' and being a good storyteller"). While these interview notes are perhaps more detailed, they are duplicative of the defendant's prior complaints, and immaterial for the very same reasons the Court originally identified. As this Court held:

> The fact that a person had a reputation for stretching the truth while in high school does not raise meaningful doubts about that person's credibility with respect to statements she made years later as an adult to law enforcement about a crime in which she participated but of which she was also victim. It does not suggest that as an adult FV-1 would lie or had lied about a matter of importance, nor does it cast doubt on the probable cause established by the warrant. *See, e.g.*, *United States v. Fortes*, 619 F.2d 108, 118 (1st Cir. 1980) ("[T]he district court is not bound to allow examination into every incident, no matter how remote in time and circumstances, that may possibly bear upon the witness' veracity."); *United States v. Pickard*, 211 F. Supp. 2d 1287, 1295 (D. Kan. 2002) ("[A]n isolated untruth may have little, if any, conceivable relevance to a witness' credibility.").

*Id.* at 32-33. That reasoning applies equally here.

*Second*, the defendant points to a single misrepresentation that Female Victim-1 made in her many meetings with the Government, namely that she concealed that a particular individual was in fact a prostitution client ("Client-1"). As the 3500 reflects, she made this misrepresentation in order to protect Client-1's interests and at his urging (and after he had assisted in her escape from the defendant). What matters most for purposes of this motion, however—and as the defendant acknowledges—Female Victim-1 did not divulge to the Government that she had misrepresented the truth until *after* the execution of the warrants at issue, in October 2022, belying any claim that Special Agent Maguire misrepresented the facts. On the contrary, and as the defendant acknowledges, Client-1 had repeated these same misrepresentations to the Government before the warrants were executed. Moreover, even if this misrepresentation had been known, the fact that Female Victim-1 minimized a single detail of her prostitution history, does not call into question her detailed admissions about this embarrassing chapter in her life, which was corroborated in the many respects outlined in the Court's original opinion. The warrant affidavits themselves did not incorporate the misrepresentations about Client-1, which ultimately have no bearing on probable cause that the defendant committed the alleged crimes. This information simply does not call into question the Court's thorough analysis of the warrants' probable cause.

The disclosure of 3500 material—which routinely includes additional information about witness credibility and the evolution of a witness's relationship with the Government—is generally not a basis to revisit suppression motions, particularly absent a material revelation about an omission or misrepresentation that was necessary to probable cause, and that the affiant made

deliberately or in reckless disregard for the truth. *See* Dkt. 164 at 21. The defendant's motion falls well short of demonstrating such an omission warranting this Court's reconsideration, and the motion should therefore be denied.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By: __/s/__Danielle Sassoon____
     Mollie Bracewell
     Danielle R. Sassoon
     Lindsey Keenan
     Assistant United States Attorneys
     Southern District of New York
     (212) 637-1115

cc:    Defense Counsel (by ECF)