**Federal Defenders**
OF NEW YORK, INC.

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

David E. Patton
*Executive Director*

*Southern District of New York*
Jennifer L. Brown
*Attorney-in-Charge*

March 31, 2022

**Via ECF**

The Honorable Lewis J. Liman
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re: **United States v. Lawrence Ray**
**20 Cr. 110 (LJL)**

Dear Judge Liman:

We write to state our objections to certain exhibits the government presumably intends to introduce through, and feature during the testimony of, Revenue Agent Catanzaro (these exhibits have not been specifically identified by the government in advance of the witness's testimony). Given the late hour at which the "final" version of Agent Catanzaro's exhibits were provided to the defense last night and the time needed to review them, the defense has not yet had an opportunity to meet and confer with the government regarding these objections. Should the parties be able to resolve any of these objections before the witness testifies, we will promptly inform the Court.

As an initial matter, we object to the lateness of the disclosure of certain information within these exhibits. A substantial basis for the Court's ruling permitting Agent Catanzaro to testify (notwithstanding the fact that she was not disclosed as an expert) was that the government represented to the Court that it would disclose by the end of the week of February 24, 2022 "and thus well before trial" drafts of the charts the agent would use at trial and what the evidence would establish. Dkt. 382 at 36. In light of these representations, the Court concluded that the defense would not be surprised by "unexpected testimony" because it would have—well in advance of trial—"both the methodology by which the agent will determine the amount of tax due and owing and the documents to which the agent will apply that methodology." *Id.* at 37.

The "final" version of these exhibits were provided at 9:35 p.m., yesterday, March 30, 2022. What these exhibits and the corresponding 3500 material reflect for the first time are "alternate" tax loss calculations from Agent Catanzaro that were first provided to the government on the evening of March 28, 2022 and disclosed to the defense as 3500 material at some point during the trial day (or after) on March 29, 2022. While the Court previously understood that the defense would have sufficient time and information to determine how Agent Catanzaro calculated her original tax loss amounts, these newly disclosed "alternate" calculations reflect

subjective judgment calls by the Agent that are not readily apparent to the defense and have not been previously disclosed.

For example, while the original drafts of these exhibits indicated that the agent would categorize all amounts listed in certain handwritten or typed "ledgers" as "unreported income," the charts disclosed to the defense as exhibits last night reflect that Agent Catanzaro has calculated "alternate" tax loss amounts based on her subjective decisions to exclude certain deposits in the accounts of Isabella Pollock and include some amounts purportedly attributable to Talia Ray, Gordon Ray, or "GoDaddy Expenses ICP." GX 1427 at 2, 7, 13. The defense does not know the basis for the inclusion of these latter amounts in the "alternate" tax calculation that was just disclosed. The Court previously held that Agent Catanzaro could testify as a "summary witness," Dkt. 382 at 36–37, but the subjective analysis and determinations reflected in these alternate calculations—indeed, the very fact that the agent appears to believe there *are* "alternate" ways to calculate the tax loss amounts alleged in this case—takes this testimony outside the bounds of "summary testimony" and into the realm of expert opinion.

Moreover, the defense does not know what the sources are of the additional amounts attributed to Talia Ray, Gordon Ray, or "GoDaddy Expenses ICP" in the exhibits disclosed last night. While the slides identify the underlying source material for certain categories of information reflected on them, these amounts and the source of these numbers are unattributed in the updated slides, as are the reasons why the agent decided to include these amounts.

There are other problems with the government's exhibits. In its ruling permitted Agent Catanzaro to testify as a summary witness (not an expert), the Court held that "Agent Catanzaro's summary testimony must be based on the evidence." Dkt. 382 at 37; *cf.* Fed. R. Evid. 703 (permitting an expert to provide an opinion based on facts and data that are not in evidence). But several slides in Agent Catanzaro's deck include information drawn from materials that are not in evidence. For example, GX 1425 includes a column of information that reflects Agent Catanzaro "tracing" certain line items back to "GX exhibit 1400 – Ray Enterprise – 2018 Balance Sheet."[1] GX 1425 at 6. As reflected on the exhibit list the government produced on the evening of March 30, 2022, there is no GX 1400.

Nor are there any slides corresponding to the information purportedly contained within this exhibit in the "summary" slides that the government provided to the defense and the Court last night, which the government intends to introduce through Agent Maguire. It appears that the Revenue Agent prepared these exhibits based on earlier, draft "summary" exhibit slides that the government withdrew by email on March 25, 2022, and that were not, and are not, in evidence.[2] There is no indication in the exhibits or 3500 material that the Revenue Agent reviewed the

---

[1] The defense further objects to this conclusory, prejudicial, and misleading characterization, which would improperly invade the province of the jury and intrude on its determination of whether there was, in fact, any "Ray Enterprise."

[2] The creation of summary slides premised on other summary slides is also objectionable, as the summary slides themselves are not evidence. *See United States v. Ho*, 984 F.3d 191, 210 (2d Cir. 2020).

underlying source material on which that earlier draft slide was based (in contrast to what Mr. Lubin did).[3]

Similarly, GX 1426 includes a column of information that reflects Agent Catanzaro "tracing" certain line items back to "GX exhibit 1401 – Ray Enterprise – 2019 Balance Sheet."[4] Again, however, there is no GX 1401 with that title; the GX 1401 the government has disclosed and provided to the Court is an unrelated "summary" slide for Agent Maguire. Again, it appears that the Revenue Agent prepared these exhibits based on draft "summary" exhibit slides that the government withdrew on March 25, 2022, and that were not, and are not, in evidence. Again, there is no indication in the exhibits or 3500 material that the Revenue Agent reviewed the underlying source material on which that earlier draft slide was based. These same deficiencies are reflected in GX1427 as well.

Accordingly, we respectfully request that the Court preclude testimony and any exhibits regarding the Revenue Agent's "alternate" tax calculation and preclude any exhibits and testimony from this "summary" witness reflecting information that is not properly in evidence or summarized by the witness.

Respectfully submitted,

/s/

Marne L. Lenox
Peggy Cross-Goldenberg
Allegra Glashausser
Neil P. Kelly

*Counsel for Lawrence Ray*

cc:   Counsel of record

---

[3]   The defense did not raise the present objection after the withdrawal of GX 1400 both because the Agent's exhibits have continued to evolve over the course of the trial and because it did not know, prior to receiving the "final" exhibits last night, if the Revenue Agent was ultimately going to review the underlying source material as it appears she did with other categories of information.

[4]   We reiterate our objection to this language as well.