

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

March 31, 2022

**BY ECF**
The Honorable Lewis J. Liman
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    *United States v. Lawrence Ray*,
              S2 20 Cr. 110 (LJL)

Dear Judge Liman:

      The Government respectfully submits this letter in response to the Court's questions posed on the record today about potential permissible purposes for Mr. Ripa's testimony.

      The Government anticipates that tomorrow's hearing will establish that the defendant's advice-of-counsel defense fails as a matter of law. Such testimony may be relevant, however, to the defendant's specific intent on the tax charges. *See, e.g.*, *United States v. Okun*, 2009 WL 414009, at *6 (E.D. Va. Feb. 18, 2009) ("If [the defendant] is not able to furnish sufficient evidence to warrant an instruction on the good faith reliance on counsel defense, any evidence of attorney advice presented might be relevant to the issue of specific intent."). But it would not be relevant to the remaining charges.

      As a general matter, a good faith instruction is improper with respect to general intent charges, like extortion. When fraudulent or wrongful intent or willfulness is an element of an offense charged, a defendant may request a "good faith" instruction that specifies that acting based on an honestly held belief negates the element of intent with respect that that offense. *See* Sand *et al.*, *Modern Federal Jury Instructions*, Instr. 8-01. But such an instruction is not applicable to charges that lack such an element. *See, e.g.*, *United States v. Svoboda*, 633 F.3d 479, 484 (6th Cir. 2011) (instruction not applicable where defendant was charged with presenting false identification, because the offenses required only that the defendant acted "knowingly"); *United States v. Ansaldi*, 372 F.3d 118, 128 (2d Cir. 2004) (instruction not applicable where defendants were charged with distributing and possessing with intent to distribute a controlled substance, because that offense requires only that the defendant act "knowingly or intentionally"), *abrogated on other grounds by McFadden v. United States*, 135 S. Ct. 2298 (2015). For such "general intent" statutes, "the background presumption that every citizen knows the law makes it unnecessary to adduce specific evidence to prove that 'an evil-meaning mind' directed the 'evil-doing hand.'" *Bryan v. United States*, 524 U.S. 184, 193 (1998). A "good faith" instruction has no place when such offenses are

charged, because the government must prove only (at most) the defendant's knowledge of the facts comprising the offense, that is, "knowledge with respect to the *actus reus* of the crime," *Carter v. United States*, 530 U.S. 255, 269 (2000), not that the defendant acted with any specific intent in committing the crime. *See generally United States v. George*, 386 F.3d 383, 389-96 (2d Cir. 2004).

Moreover, a purported "claim of right" to the extortion proceeds would not negate the intent for extortion and extortion conspiracy, where the Government's allegations are that the defendant used violence, threats of violence, threats of reputational harm, and other wrongful threats to obtain the money. *See, e.g.*, *Lurie v. Wittner*, 228 F.3d 113, 134 (2d Cir. 2000) ("A person is not absolved of willful wrongdoing because he relied on his attorney's advice." (internal citation and quotation marks omitted)). Any alleged belief about being entitled to the money, however genuinely held and even if based statements by counsel, has no bearing on the relevant intent. The same arguments that the Government advanced in support of its motion to preclude the testimony of Dr. Pierre apply here. (Dkt. 289 at 2-5).

As argued at greater length in that brief, a threat is *ipso facto* wrongful where it "causes the victim to fear a harm that is itself wrongful, such as physical injury, or because the means is wrongful, such as violence." *United States v. Jackson*, 180 F.3d 55, 69-70 (2d Cir.), *on reh'g* 196 F.3d 383 (2d Cir. 1999).[1] Any claim of right is not a good faith defense to the violence and threats of violence the defendant used against his victims. It also does not overcome the wrongfulness of the defendant's other threats—including to post humiliating content on the internet and to send them to suffer miserable fates in prison. Even where a defendant can demonstrate a *plausible* claim of right to the money extorted, this Circuit has recognized as "inherently wrongful" threats that have "no nexus to a claim of right." *Jackson*, 180 F.3d at 70.

The nexus is plainly lacking here in two critical respects. *First*, *Jackson* distinguished between "threatened disclosures . . . as to which the threatener has a plausible claim of right, and, on the other hand, threatened disclosures of such matters as sexual indiscretions that have no nexus with any plausible claim of right." *Id.* at 71. The defendant's threats were plainly of the latter type—involving, for example, threats to embarrass victims on the internet and before the CDC, to subject them to horrifying prison conditions, and to inflict painful and terrifying circumstances like abduction and relocation to the Middle East. *See also, e.g.*, *United States v. Hobgood*, 868 F.3d 744, 748 (8th Cir. 2017) (defendant's "threats were 'wrongful' in the sense that they had no causal nexus to a claim of right. . . . His threats to disseminate information that KB was an exotic dancer and prostitute were not related to [his supposed claim of right]."). In this latter category, "if the victim makes the demanded payment, thereby avoiding disclosure, there is nothing to prevent the threatener from repeatedly demanding money even after prior demands have been fully met." *Id.* at 71. That was precisely the pattern that the defendant followed here, and precisely what *Jackson* described as inherently wrongful.

*Second*, *Jackson* recognized that there must be a nexus between a plausible claim of right and the money or property that is demanded. Here, the defense cannot establish through Mr. Ripa's testimony or otherwise that even if the defendant reasonably believed he was poisoned by a victim,

---

[1] *Jackson* was interpreting 18 U.S.C. § 875(d), but stated that: "Given Congress's contemporaneous consideration of the predecessors of § 875(d) and the Hobbs Act, ... we infer that Congress's concept of extortion was the same with respect to both statutes." 180 F.3d at 70.

he was therefore entitled to demand *millions* of dollars from Claudia, hundreds of thousands of dollars from his remaining victims, and free manual labor from several victims on his stepfather's property.  To the contrary, the defendant appears to have deliberately omitted this information when he spoke to Mr. Ripa.  In *Jackson*, this Circuit explained that even where the defendant held certain beliefs, there was an insufficient nexus between those beliefs and her demand for $40 million dollars on the threat of reputational harm.  *Jackson*, 196 F.3d at 387.  So too here.  The harm the defendant supposedly believed he suffered—including by alleged poisoning—is not readily quantifiable, was not purely economic, and does not support a reasonable belief that the defendant was entitled to millions of dollars.  Without demonstrating a nexus between the defendant's supposed claim of right and his monetary demands, the defendant falls well short of any legally-viable claim of right that would render Mr. Ripa's testimony relevant to any charge apart from the tax charges.

Although conversations with counsel may bear on a defendant's specific intent about his tax obligations, such evidence is "relevant *only* to those actions which took place *after* the statements of counsel were made known to the defendant."  *Okun*, 2009 WL 414009, at *7 (emphasis added).  "Inherent in the concept of advice of counsel is that the defendant sought an attorney's advice as to what he could lawfully do in the future." *United States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181, 1195 (2d Cir. 1989); *see also United States v. Scully*, 877 F.3d 464, 478 (2d Cir. 2017) (defense requires that, "[b]efore taking action, he in good faith sought the advice of an attorney").  Based on the Rule 26.2 material, it appears that Mr. Ripa does not recall when his conversations about the defendant's tax obligations took place, and regardless they seem to have occurred after Claudia began working as a prostitute and after the defendant began taking money from her.  If that is confirmed at the hearing, Mr. Ripa's testimony may not be relevant even to the question of the defendant's specific intent and good faith on the tax charges, and certainly not to the other criminal charges, where the defendant had "already manifested his intent to take the action in question." *Id.* (internal alterations omitted).  And in those circumstances, any marginal probative value would be far outweighed by the prejudice of having an attorney appear to vouch for the defendant's behavior. The conversation with Mr. Ripa would serve no purpose other than to mislead the jury into believing that a lawyer had "blessed" the defendant's conduct, and would be highly prejudicial to the Government. *See, e.g.*, *SEC. v. Tourre*, 950 F. Supp. 2d 666, 684 (S.D.N.Y. 2013) (explaining that a "lay jury" cannot reasonably be expected to understand and accept the "fine-grained distinction" between advice-of-counsel and the good faith defense offered by the defendant).

In the event the Court admits Mr. Ripa's testimony for a limited purpose relevant to intent on the tax charges, but not an advice-of-counsel defense and not as a good faith defense to extortion and other crimes, the Government is working on a proposed limiting instruction.

Finally, the Government does not intend to proceed on Count Ten or the state law predicate of grand larceny in the fourth degree by extortion that is included in the predicate racketeering acts.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By: __/s/__Danielle R. Sassoon___
   Mollie Bracewell
   Danielle R. Sassoon
   Lindsey Keenan
   Assistant United States Attorneys
   Southern District of New York
   (212) 637-2218

cc:   Defense Counsel (by ECF)