**DAVID K. BERTAN**
ATTORNEY AT LAW
41 EAST 11TH STREET, 11TH FLOOR
NEW YORK, NEW YORK 10003

(718) 742-1688
E-MAIL: DBERTAN@YAHOO.COM

January 30, 2023

**BY ECF AND BY HAND**
The Honorable Lewis J. Liman
United States District Judge for the
Southern District of New York
500 Pearl Street
New York, NY 10007

    RE:   *United States v. Isabella Pollok*, 20-Cr-110 (LJL)

Dear Judge Liman:

    This prosecution reveals four phases of Isabella Pollok's life: There is the damaged, lonely Sarah Lawrence College freshman. There is the awed protégé. There is the broken automaton. And now there is the Isabella who is before Your Honor prepared to be sentenced. If it were not for Lawrence Ray's presence at Sarah Lawrence, Isabella would not be here. She does not deserve to go to jail.

<u>The Damaged, Lonely Sarah Lawrence College Freshman</u>

    Isabella's childhood in San Antonio, Texas, was one of abuse and neglect. Her drug and alcohol addicted mother and father were largely absent. Her older brother, also a drug addict, physically abused Isabella in their mother's presence. Isabella remembers being made to stay with her grandmother ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

███████████████████████████████████

In 2009, Isabella saw going to Sarah Lawrence as an "opportunity to escape" and free herself from the "quicksand" that had devoured her parents and her brother.[1] *See* Exhibits A and B. Sadly, Isabella could not escape her past. By the start of her sophomore year, Isabella had formulated plans to commit suicide when she returned to San Antonio for the winter break. Talia Ray, Isabella's roommate – Isabella's one true friend and confidant – saw that Isabella was suffering but felt at a loss to help her. Talia introduced Isabella to her father, Lawrence Ray, believing he would be able to help her best friend.

Ray had settled himself in their campus apartment and was conducting nightly "counseling" sessions for the roommates. Ray paid attention to Isabella and listened to what she had to say not only in these group settings, but also individually during the hours he spent in her room and her bed behind closed doors. Ray "awed" Isabella along with Talia's other roommates all the while grooming them to satisfy his insatiable quest for power, control and sexual gratification.

Ray had studied the tools of successful manipulators, and as the "counseling" sessions continued, Ray learned the vulnerabilities and disabilities of his student-victims. To some he was a self-esteem coach; to others he was a sex guru. To all, including Isabella, he became a domineering and manipulative monster. Some of the victims were tortured and manipulated into feeling worthless, while others were made to feel unsure about their own sexuality. All were abused by Ray.

---

[1] Isabella has written two letters during this prosecution, and both are included as part of this submission. Isabella has written to Your Honor now for consideration as Your Honor determines her sentence. The first letter was written to the prosecutors on June 7, 2022 and submitted to support a request for a deferred prosecution (DP). Both letters are included. Isabella's letter to Your Honor is Exhibit A; her letter to the Government is Exhibit B.

The Honorable Lewis J. Liman
United States District Judge
January 30, 2023
Page 3 of 10

The "Awed" Protégé

To Isabella, Ray was her savior. In Isabella's eyes Ray literally saved her from suicide. Isabella says, "I was looking for a life line and Lawrence Ray seemed to be that life line…. He did save my life …." *See* Exhibit B.

Ray's manipulation of Isabella was different in kind from the other student-victims because among other things he had made her his lover. But she was no less a victim. ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ and Ray manipulated Isabella into believing that these sexual acts were for her own good. Ray conditioned Isabella to become his partner, his recorder and his bookkeeper. Ray directed Isabella to collect money, track expenses, and video and audio record his abuse sessions with the other victims. By the time Ray moved his cult from the Sarah Lawrence campus to Manhattan, Isabella had become the broken, automaton Isabella, fully under Ray's control.

The Broken Automaton

As he did with his other victims, Ray convinced Isabella he alone knew what was best for her. He dictated her life details, what she did, what she wore, what she ate, where she went. He exercised complete control over her. When he said "jump," she said "how high." In short, Isabella was "fearful of a life without Ray."[2] Ray justified his extortion and abuse of the others to Isabella by convincing her that they had poisoned the two of them. Put simply, Ray "brainwashed" Isabella, molding her into his trusted aide.

In October 2020, Chitra Raghavan, PhD, undertook a psychological evaluation of Isabella at the request of Isabella's then lawyer.[3] In Dr.

---

[2] *See* Exhibit C, Mitigation Report of Lisa McDermott, Jan. 25, 2023 at 1.

Raghavan's opinion, Isabella fits the psychological profile of a cult victim with a "trauma bond" to Ray – a pathological dependency and loyalty to Ray "including unquestioning obedience from a combination of terror of being punished and loss of agency from the abuse." *Id.* at 6 n.9. This identification with Ray continued even after he was arrested and indicted.

Ray's cult had two tracks. One track was for student-victims he exploited for his own twisted gratification. This track included Santos Rosario, whom he extorted for money, along with Santos' siblings, Felicia and Yalitza; Daniel Levin, whom he sexually abused; and Claudia Drury, whom he prostituted to support his lifestyle. He coerced these victims into doing his bidding by first claiming only he knew what they needed to overcome their emotional and mental health issues; then he extorted them by threatening blackmail and convincing them they had poisoned him.

As this Court stated, Ray first used his apparent charm and exaggerated sense of self to earn their trust, then he used the skills he studied in textbooks to rob his victims of their self-worth, their dignity, their family relationships, their bodies, and their money. He made them think that what they thought they knew was false, and made them accept his word as law.

The second track was only Isabella. Ray groomed Isabella, at first by listening and paying attention to her. Ray then became her lover and convinced her of the need to explore her sexuality. He "counseled" her and became her life mentor. His techniques, well established tools of coercive control, easily bonded Isabella to him. Isabella did whatever Ray directed. She does not deny that she enforced his bizarre edicts and philosophies. Rather, by pleading guilty, she has accepted full responsibility for her conduct.

---

[3] Report of Chitra Raghavan, PhD, Oct. 22, 2020 (Exhibit D) at 2. Dr. Raghavan's report was first provided to the Government in June 2022 as part of the deferred prosecution request and is submitted here under seal because it discusses Isabella's personal health information. We will provide Dr. Raghavan's CV if requested.

The Honorable Lewis J. Liman
United States District Judge
January 30, 2023
Page 5 of 10

### The Isabella Pollock Who Stands Before this Court for Sentencing

Although indicted in January 2021, it was not until July 2021 that Isabella's defense team stabilized and was expanded to include Lisa McDermott, a licensed mental health counselor and experienced mitigation specialist. Ms. McDermott worked with Isabella for more than 100 hours helping her to separate from Ray and their shared delusional beliefs. As part of the work necessary to break away from Ray, Isabella and Ms. McDermott reviewed some of the video and audio recordings that were introduced at Ray's trial. Isabella was horrified and ashamed of her conduct. She could not understand how she had allowed herself to be used by Ray in this fashion.

From that work, Isabella finally began to understand what Ray had done to her. As Isabella says, "I trusted Lawrence more than I trusted myself and in so doing I betrayed my own sense of right and wrong." *See* Exhibit A. Now, she realizes the extent of his control – including what he made her do to the others – and she feels tremendous guilt and remorse. Isabella will live with this guilt for the rest of her life.

In June 2022, Isabella's defense team retained Alan M. Goldstein, PhD, to undertake a forensic psychological evaluation of Isabella.[4] In Dr. Goldstein's opinion, Ray's success making use of Isabella "in his pursuit of his own sexual gratification and power was because [she] was so highly

---

[4] Even though Isabella never read Dr. Raghavan's report, because of Isabella's distrust of her first lawyer she was suspicious of Dr. Raghavan. Dr. Goldstein was engaged to start fresh with Isabella and to address the factors that contributed to Isabella's vulnerability to Ray, Ms. Pollok's changed perception of her victimization and Ray's control between Ray's arrest and her guilty plea, and to opine on her prognosis for continued improvement. *See* Report of Alan M. Goldstein, PhD, Jun. 8, 2022 (Exhibit E). As with Dr. Raghavan's report, Dr. Goldstein's report was first provided to the Government as part of the DP request. Dr. Goldstein's report is submitted here under seal because it discusses Isabella's personal health information. We will provide Dr. Goldstein's CV if requested.

The Honorable Lewis J. Liman
United States District Judge
January 30, 2023
Page 6 of 10

vulnerable…. She was a victim, a blind follower." *See* Exhibit E. Over the 18 months that Isabella worked with her defense team, she came to recognize that her "savior … who could do nothing wrong" had in reality created a "highly dysfunctional, exploitative" relationship. *Id.* at 17. Dr. Goldstein's opinion was that Isabella's prognosis was "a positive one" and the "likelihood that [she] would engage in similarly self-destructive behaviors in the future is low." *Id.* at 20.

In anticipation of sentencing, in January 2023 we asked Dr. Goldstein to focus on his view of Isabella's risk for re-offending. Dr. Goldstein said:

> Given [Isabella's] dysfunctional, abusive, and chaotic childhood, she was desperate for attention, validation, and acceptance. Mr. Ray quickly recognized her vulnerabilities, and, consistent with the skills of a psychopath, he took full advantage of her neediness and desperation…. [T]his bizarre relationship created a perfect storm, fully merging [Isabella's] actions and perceptions with Mr. Ray's perverted fantasies and demands…. [T]he chances of [Isabella] meeting someone as manipulative and skillful as Mr. Ray are remote. [Isabella] has developed insight into those factors that contributed to her vulnerability."

*See* Exhibit F at 4.

Federal Sentencing Guidelines and Statutory Sentencing Factors

In determining an appropriate sentence, a judge is required to consider both the advisory Federal Sentencing Guidelines and 18 U.S.C. §§ 3553(a) and (b). While the Court must consider these factors, they provide little guidance for determining an appropriate sentence for Isabella.

The required analysis starts with the plea: Isabella pled guilty to conspiracy to commit money laundering in violation of 18 U.S.C. § 371.

The Honorable Lewis J. Liman
United States District Judge
January 30, 2023
Page 7 of 10

Her offense specifies a maximum sentence of 5 years. Isabella has no criminal history. Because the underlying offenses involved extortion and sex trafficking, the guidelines range stipulated by the parties in the plea agreement would have been 108 to 135 months, but for the statutory maximum. Because the statutory maximum is 60 months, the advisory Federal Sentencing Guideline is 60 months. *See* U.S.S.G. § 5G1.1(c)(2).

Probation agrees with the calculation in the plea agreement and recommends a downward variance to a prison sentence of 6 months:

> We acknowledge that Pollok is [a] first-time offender, and had she not met Lawrence Ray, would most likely have led a law-abiding lifestyle.

Presentence Report, Nov. 29, 2022 at 29. We would phrase this with more certainty. Had Isabella not met Lawrence Ray, she would have led a law-abiding lifestyle and would not be facing sentencing by this Court. Simply put, Isabella should not be sent to prison.

The factors this Court must consider under § 3553 (a)(2) include the seriousness of the offense and the history and characteristics of the defendant. The sentence imposed should promote respect for the law, provide just punishment, afford adequate deterrence, protect the public, provide the defendant with rehabilitation, and avoid unwarranted sentencing disparities.

### *Seriousness of the Offense*

We do not challenge the seriousness of the offense. The crimes here are serious. Ray's decades-long campaign of terror, abuse, and extortion has left deep scars on all his victims who no doubt have been damaged for life. At Ray's trial, the Government characterized Isabella as Ray's "chief lieutenant." Isabella was a victim on a different track – conscripted if you will. Ray physically, sexually, and emotionally abused Isabella and manipulated her so that she would do his bidding. As Isabella writes,

> I reached a point with Lawrence where I preferred the physical violence he subjected me to over the emotional torment because I found it less painful. The uncertainty of what he would do to me daily became the most psychologically damaging.

### *Isabella's History and Characteristics*

In this submission, we have attempted to describe Isabella's history. The rich details are presented in Dr. Goldstein's report and in our DP request (Exhibit G).

Now, for the first time, Isabella at 31 years old, has a stable romantic relationship with an appropriate partner free of abuse. Isabella met Zohair Bhatti at work, and they have been a romantic couple since July 2021. Zohair describes Isabella as "compassionate, caring and kind." *See* Exhibit H. He continues,

> [Isabella] is a dedicated and responsible person who is always willing to lend a helping hand and goes out of her way to support and advocate for her colleagues, particularly those who may be shy or are facing mistreatment or overwork.

Zohair's observation dovetails with Isabella's own description of training younger colleagues – employees the same age that Isabella was when she met Ray. Isabella sees in the younger Amazon employees the same uncertainty and needs that she had when she was 19. This realization makes her more empathetic with her co-workers and more aware of how immature and vulnerable she was when she met Ray.

### *Deterrence*

As for specific deterrence, in Dr. Goldstein's opinion "[Isabella] has changed significantly, to the degree to which she is no longer vulnerable

to the efforts of others to manipulate her for their own gratification." Exhibit G.  This is the unusual case where sentencing punishes the victim, and jail for Isabella could cause other victims to fail to seek help from law enforcement fearing prosecution and jail.

### Determining A Just Sentence

Justice dictates a non-jail sentence.  As Lisa Mc Dermott noted, Isabella has started to take steps to gain control over her life.  *See* Exhibit C. Isabella is in a loving, supportive relationship.  She has career goals, and she is paying attention to her physical health. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  Isabella has expressed repeatedly the desire to engage in real psychotherapy.  Isabella wants to understand herself better, but she deliberately chose to delay the therapy until after Ray was sentenced because she did not want to risk that her therapist's notes could be made available to Ray and his lawyers.

In Ms. McDermott's opinion,

> [I]ncarceration would be devastating for Isabella Pollock. She has just begun to take back control of her life.  The Bureau of Prisons will take that control away from her again. It is also this writer's belief that the break in progress due to lack of meaningful psychological care will set her back. Isabella needs support, guidance and continued healing….

*Id.*

Conclusion

Isabella does not make any excuses for her behavior, and candidly admitted her participation in the conspiracy.  From the date of her arrest, when she was still his automaton, to the day she pleaded guilty, she has made tremendous progress toward her own rehabilitation.  She

recognizes that her actions inflicted grave and lasting damage to her former friends, and she feels deep shame, remorse and guilt.

Isabella has paid a heavy price for her involvement with Lawrence Ray. She lost a decade of her life, her self-respect, and several friends. She will have to live with the memory of how Ray manipulated and dominated her, physically and mentally, and will live the rest of her life with the guilt of what she did to the other victims.

Isabella has punished herself for her actions, and will continue to do so for a long time. In this case, a non-jail sentence is sufficient to serve the ends of justice.

Respectfully submitted,

*David B. Bertan*
David K. Bertan, Esq.

*Jill R. Shellow*
Jill R. Shellow, Esq.

*Attorneys for Isabella Pollok*